1808.

### SAMUEL PECK *against* DEODAT WOODBRIDGE.

WRIT of error.

This was an action on the case for a fraud, practised by *Peck*, in obtaining a decree in chancery against *Woodbridge.*

The declaration stated, that *Woodbridge*, on the 1st of *January*, 1773, became vested with the title to a certain piece of land, subject to a right of redemption by *Noah Rust*, and *Elizabeth*, the wife of *Peck*, children, and only heirs of *Noah Rust*, deceased, by whom the land was originally mortgaged. In 1782, those heirs brought a bill for liberty to redeem the mortgaged premises; whereupon the court decreed, that upon their paying the mortgage debt within a certain limited time, *Woodbridge* should give them a quit-claim of his right and title; and in case of their neglect so to make payment, their equity of redemption should be foreclosed. The money was not paid, and *Woodbridge* continued in possession, and made valuable improvements, and erected buildings on the land. He, and those from whom he derived title, had been in possession from the year 1770.

In 1799, *Peck*, in the right of *Elizabeth*, his wife, with her and *Rust*, brought their bill in chancery to the superior court against *Woodbridge*, praying for liberty to redeem said land; and stated, as the principal ground of sustaining the application after such a lapse of time, that said *Elizabeth* was married to *Peck* during her minority, and ever since had been, and continued to be, his lawful wife. On a hearing before the court, in *September*, 1801, this allegation was by them found to be true, and

*A man cannot collaterally impeach, or call in question, a judgment of a court of law, or a decree in equity, to which he is a party. No action, therefore, will lie, for obtaining a decree by false and forged evidence, while such decree remains in force.*

5

a redemption decreed. In compliance with this decree, *Woodbridge* had surrendered the premises.

The declaration then averred that said allegation was false, and known by *Peck* to be so; and the finding of the court was made entirely upon mistaken evidence, which *Peck* had fraudulently imposed upon them.

The fraud was stated to have been practised in this manner. *Peck* had been informed by Mrs. *Evans*, an aged woman in the neighbourhood, that his wife was born within two or three days of the birth of her daughter *Jenny*, whose birth-day was recorded, with those of her other children, on a leaf in her bible. This record *Peck* surreptitiously, and without the knowledge of Mrs. *Evans*, altered from the 11th day of *July*, 1762, to 1764, and left the bible where he found it. He then produced her as a witness before the court, to testify as to the time of his wife's birth. She unsuspectingly swore, that Mrs. *Peck* was born the same month, and within a few days of the birth of her daughter *Jenny;* and that she had recorded that day, with the birth-days of her other children, on a leaf in her bible. She then showed to the court the record which had been altered as stated, as being the true one made by herself; and testified, that from such record she knew that Mrs. *Peck* was born within two or three days of the 11th day of *July*, 1764.

The declaration concluded by alleging special damages, occasioned by the fraudulent practices of *Peck*. The date of the writ was the 30th of *July*, 1805.

*Peck* pleaded in bar, that on the 21st of *August*, 1805, *Woodbridge* brought a bill in chancery, stating the same facts in substance as those alleged in this action, and praying that the decree passed in *September*, 1805,

might be set aside; which the court, in *September*, 1806, accordingly decreed, at the same time enjoining *Peck* not to make any use of his quit-claim from *Wood-bridge*, and ordering him to pay to *Woodbridge* his costs in both the chancery suits.

There was then a demurrer and joinder.

The superior court adjudged the plea sufficient.

*Brace* and *E. Perkins*, for the plaintiff in error.

It is incumbent on the defendant in error to show, that such an action as this can be supported by *precedent* or *principle*. It will not be pretended that any *case* is to be found in the books, where a plaintiff has sustained an action at law, on the ground that the defendant had obtained a decree in chancery against him. Nor is there any *principle*, or *analogy*, which countenances such an action. A decree in chancery, while it remains in force, is not only conclusive with respect to the rights of the parties decided by it, but imports in itself conclusive evidence that it was rightly obtained. This position is supported by numerous authorities in the *English* books, and has been sanctioned by more than one solemn decision in this court. The case of *Bush v. Sheldon*, 1 *Day's Cas.* 170., compares with this. There evidence was admitted by the superior court to show that the decree of probate was obtained fraudulently. This court unanimously reversed the judgment, on the ground that the decree could not be impeached collaterally. This principle is founded in sound policy: on a different plan, there would be no end to litigation. Nor can any hardship result from it. If a decree has been obtained against a party wrongfully, let him bring forward his process to set it aside. The mode of redress is pointed out in our

books of practice. It is, indeed, the very one, which, in this case, has been resorted to.(a)

Will it be said, that chancery can furnish but partial relief? We answer, that in every case where chancery has jurisdiction of the principal subject matter, it can furnish all the relief that the nature of the case requires. The *principal* necessarily brings before the court such things as are *incidental*. 3 *Bl. Comm.* 437. *Martin* v. *Martin*, 1 *Ves.* 211. *Brooks* v. *Reynolds*, 1 *Bro. C. C.* 183. *Hardcastle* v. *Chettel*, 4 *Bro. C. C.* 163. *Beardsly* v. *Halls*, 1 *Root*, 366.

Will it be said, that chancery cannot give *damages?* Chancery is, appropriately, the *forum* to consider and decide the question of damages. In an action at law on a bond, the court is to take up the case *as a court of chancery*, and settle the damages. In *England*, indeed, the chancellor does not assess the damages himself, but directs an issue to be tried of *quantum damnificatus*. Here, the courts assess the damages directly.

*Sloman* v. *Walter*, 1 *Bro. C. C.* 418., was cited as an instance where chancery assessed damages.

[REEVE, J. There, the court went on the ground of relieving against a penalty.]

The defendant in error has obtained all the redress to which he is entitled by his bill in chancery. He sought, in his bill, complete redress; it was competent to chancery to grant complete redress; he cannot be permitted now to say that he has not obtained it. Can he then sustain an action at law for *further* redress?

But suppose the powers of chancery incompetent, and that an action may be brought to recover damages; in

(a) *Mitf. Plead.* 84.

that case, no damages can be given for any thing subse-quent to the date of the writ. *Brasfield* v. *Lee*, 1 *Ld. Raym.* 329. *Fetter* v. *Beal*, 1 *Ld. Raym.* 339. 692. *Baker* v. *Bache*, 2 *Ld. Raym.* 1382. In the present case, the court have assessed damages; but it does not appear, whether for matters before, or after, the action was brought.

Further, if an action at law can be maintained, it must be for *consequential* damages. If so, this action is *premature*. No cause of action existed at the commencement of this suit; as the bill in chancery had not then been brought.

But this action does not proceed on the idea of a defect in the power of the court of chancery; but expressly on the ground of obtaining a double satisfaction. It is brought as an original action, claiming damages for the whole injury.

The principle involved in the present case is very important. To permit two original suits for the same cause to be prosecuted and pending at once, is absurd; is opposed to the general policy of legal proceedings; would occasion endless vexation, and needless expense.

*Goodrich* and *Daggett*, for the defendant in error.

This is an action on the case for a deceit in procuring a decree in chancery. It is objected, that that decree may yet be set aside, and the party injured by it restored to his rights. But the existence of that decree is not the only injury. The party has been subjected to great expenses in making defence; in procuring counter testimony; in employing counsel; in the derangement of his business, &c. To set aside the decree merely, would afford but partial redress. Complete redress can be had

only by the action which has been brought; the nature of which is, that it may be adapted to the circumstances and exigencies of the case. *Bush* v. *Sheldon* was an action of ejectment for the land. But suppose it had been an action on the case against *Isaac Sheldon* himself for the *fraud;* could it not have been supported? In *Stewart* v. *Warner* the action went to invalidate the decree. But suppose it had been against *Stewart*, the master, for *fraud in obtaining* the decree; would it not have been sustained? The object of our action is not to affect a title established by the decree; to recover money paid in obedience to the decree; nor to obtain any thing inconsistent with the validity of the decree.

Actions founded on the same principle as this have been brought, and sustained. *Phelps* v. *Griswold*, before the superior court in *Hartford* county, and *Hanford* v. *Pennoyer*, in *Fairfield* county,(*a*) are in point.

The bill in chancery which we have brought, is *in the nature of an original bill;* because it is a bill of *right.* In order to bring a bill of review, permission to bring such a bill must first be obtained of the chancellor. But this bill, which attacks the decree on the ground of fraud, may be brought like an original bill. On this bill, *no damages* are recoverable. All that the court can do is to place the parties in their former situation. The complainant asks only to be restored to all that he has lost by the decree. This kind of bill always supposes a former decree, and has reference to

(*a*) That was an action for fraudulently obtaining, before *a justice of the peace*, a judgment against the plaintiff, by false and corrupt testimony. In the superior court, a recovery was sustained, on the ground, that the case admitted of *no other redress.* The fraud did not appear on the record, so that a writ of error could be brought; and our statute does not authorize a new trial, in a case before a justice. *Ex relatione* Hon. *J. Trumbull. Vide 3 Johns. N. Y. Term Rep.* 160.

June, 1808.

PECK
v.
WOOD-
BRIDGE.

June, 1808.

PECK
v.
WOOD-
BRIDGE.

it. No extraneous matters can be drawn into the bill. It is limited, by its nature, to its applicability to the former decree.

BY THE COURT, MITCHELL, Ch. J. REEVE, J. and EDMOND, J. dissenting.

It is a principle of the common law, that a man cannot *collaterally* impeach, or call in question, a judgment of a court of law, or decree in equity, to which he is a party. It can only be done *directly*, by writ of error, petition for a new trial, or bill in chancery.

In this case, the plaintiff complains that the defendant obtained a decree in his favour, against the plaintiff, which is still in force, by false and forged evidence. This collaterally impeaches such decree, by not only showing it to be wrongfully obtained, but to be wrong in itself: of course, such action cannot be sustained.

Judgment reversed.