O’Neall, J.
dissenting. In this case, I trust that, without the slightest feeling of disrespect to the judgment of a majority of my brethren, I may be allowed to express the deep regret which I entertain, that such a decision should ever have been made. It seems to me to unsettle every thing, and that, hereafter, it will only be necessary to plead or allege fraud, and every door of the common law will be opened by its magical influence.
Heretofore, I had supposed that, until the judgment of a court of competent jurisdiction upon the same matter is reversed in a course of regular proceedings on it, a resort to any other tribunal, or to the same tribunal, for its judgment on the same controversy, is inadmissible. Cottom vs. Cottom, 4 Rand. 192. In Peck vs. Woodbridge, 3 Day, 30, it is said, in affirmance of the same principle, that, a judgment obtained fraudulently, must be impeached directly by writ of error. Here, having no such proceeding, the same end may be attained by rule to shew cause why the judgment should not be set aside for fraud, or by a suggestion setting out the fraud and claiming that it should be tried by a jury. Posey vs. Underwood, 1 Hill, 262.
The relation which the defendant bears to the judgment of this plaintiff against B. P. Colburn & Co. must be first ascertained, before we can apply the legal principles which I have stated, and shall hereafter state. It cannot be denied that he is a privy in every legal sense. He is the *391 assignee, and entitled to sue upon it m his own name. This makes him essentially the plaintiff in the case. He has become, for all purposes involved in this question, the same as James S. Colburn; and would he be allowed, in this collateral way, to aver that the judgment was fraudulent 'l Such a proposition would be scouted, as too absurd to be mentioned, yet that is exactly what the court is permitting him to do here. The defendant, the assignee of that very judgment, asks to be allowed to shew that it was fraudulent, and the court answer, “ yes, you may shew it was fraudulent against you !”
The leading case at law, on this subject, Prudham vs. Phillips, Amb. 763, pointed out the very distinction which is violated by this judgment. In it, Willes, C. J. said, there is a distinction between a “ stranger who cannot come in and reverse the judgment, and must, therefore, of necessity, be allowed to aver it was fraudulent, and the case of one xoho is a party to the proceedings. If he plead the judgment was fraudulent, he cannot give eviedence of it, but must apply to the court, which pronounced the sentence, to vacate the judgment; and if both parties colluded, it was never known that either of them could vacate it.” This last clause of the C. J’s judgment, covers the case before the court. The allegation is, that B. P. Colburn & Co., and James S. Colburn, colluded together to set up a fictitious judgment. Neither of them could vacate it, and yet the assignee of one of them, it is said, may. How that can be, I confess I have yet to learn. For, as I conceive, the assignee has the rights of his assignor, and no more.
But, it is said, the fraud is in the purchase, as that by false pretences the defendant was induced to buy a judgment which was fraudulent, and void against him, as an indorser. To say nothing of the impropriety of giving here an opportunity of explaining an offer of evidence made on the circuit, it will be enough to say that the evidence, thus enlarged, leads exactly to the same result which, in a narrower form, was proposed on the circuit. If the defendant can now shew that that judgment was fraudulent as against him, before he bought it, it is, in law, permitting a party or privy to aver and prove, collaterally, fraud in the *392 judgment. This, I apprehend, cannot be done by the defendant ; for, in the first place, his purchase of the judgment concludes him. As well might a man, having all the means of information before him, say, I bought my own land; it was, therefore, a fraud. But, in the next place, until 'the defendant had vacated the assignment, he could not be allowed to make any such defence; for he is, at law, the plaintiff in the judgment of James S. Col-burn against B. P. Colburn & Co. The defence, if it be any thing beyond a mere shadow, is as clear an equity as ever I have met with. It is, that James S. Colburn was a dormant partner of the firm of B. P. Colburn & Co., and liable therefore, (I suppose) to pay the very debt for which this judgment was confessed, and the debts of which Mr. Matthews was the indorser. At law, that is no fraud; for it may be that, as between the partners, the two who confessed the judgment, ought to pay the other ; but in equity, as a partner, he may be charged to pay Mr. Matthews’ in-dorsement, and this very debt of the defendant be declared liable, as partnership assets, for the same purpose.
I understand some of the court think, that as this matter was pleaded and issue joined upon it, it ought- to have gone to the jury. But surely, if the whole evidence, offered under the plea, made out no legal defence, it cannot be that a Judge is to hear it all, and then tell the jury it is not worth a straw. In our deference to jury trials, we are every day destroying the independence of the judiciary, and, in a short time, it will come to this, that a Judge must hear every thing and decide nothing, and we shall be swallowed up in the great vortex of popular opinion, as indicated in a jury trial. No one venerates the trial by jury more than I do ; no one desires its just preservation more sincerely; but if every matter is to go before them, as is contended for here, because it has been pleaded, I think all its value will be ended, and, in its supremacy, the law will perish.