## SUPREME COURT.

### IN THE MATTER OF THE APPLICATION OF JOHN CLARK TO BECOME A CITIZEN OF THE UNITED STATES.

The *court*, and not the clerk of the court, is to admit an *alien* to citizenship. And, as the court, before admitting an alien, must be satisfied of certain facts, it follows, that the powers conferred upon the courts are *judicial*, and not · ministerial or clerical; and, consequently, that these powers can not be delegated to the clerks, but must be exercised by the court; and require an examination into each case sufficient to satisfy the court of the following facts:

1. Five years continuous residence of the applicant within the United States, and one year of like residence within the. State or Territory where the court to which the application is made is held.

2. That the applicant, during the five years, has conducted himself as a person of good moral character.

3. That the applicant is, in principle, attached to, and well disposed towards, the constitution of the United States.

The act of 1802, and its amendments, are in all respects to be complied with by persons making application, (under the first section of said act,) who arrive in this country prior to attaining the age of eighteen, *except*, that they are not required to make and file a previous declaration of intention (two years) to become a citizen; but instead thereof, the *oath* of the party, and also proof that, for the three years next preceding, it has been his intention to become a citizen, are required.

*Dutchess Special Term, Dec.,* 1854.

DEAN, Justice.    The petitioner, a native of Scotland, applied to the clerk of this court for admission as a citizen.    A number of other aliens made a like application.    The clerk was proceeding to administer the formal oath to the witness of the respective applicants, when the subject was brought to my notice; and, on inquiry, I learned that the ·practice had, for many years, been for the clerk to receive and pass upon all applications for naturalization, and grant certificates without consulting the court; and that the proof on which aliens were admitted to citizenship, did not ordinarily meet any one of the requirements of the statute.    On this state of facts, I deemed it my duty to forbid the clerk from entertaining any applica-

tions of this nature, directing that all should be made to the court. The application was then made to the court, and, on examination, I found that neither Clark, nor any one of the other candidates for citizenship, could furnish proof of continuous residence within the United States to exceed two or three years; and that each of the applicants was unprepared with any proof as to his conduct or character during even that brief period. As this decision must change the practice in naturalization cases in this court, and affect it in others, it is due to the importance of the subject, that the reasons on which it is found should be given.

There are probably no laws of a public character so imperfectly understood and so badly administered as those for the naturalization of foreigners. Among the powers which were by the states delegated to congress, was the one " to establish a uniform rule of naturalization." This power was exercised the year after the formation of the government, by an act approved by WASHINGTON, March 26, 1790. Again, in 1795, and in 1798, in an act approved by president ADAMS. All these acts were repealed in 1802, during the presidency of JEFFERSON, when the act was passed, which, though it has often been modified in unimportant particulars, and in a few instances materially changed, is the one now in force, and under which the courts derive their jurisdiction to act in the premises. One reason why these laws are so imperfectly understood and so badly administered, is, that the statutes of the United States have little application to the affairs of the states, and the best lawyers of the several states are usually ignorant of their provisions. By the laws to establish a uniform rule of naturalization, any court in the state, possessing common law jurisdiction, a seal, and a clerk, can exercise the powers of admitting aliens to citizenship. The judges of these state courts, ordinarily familiar only with the laws of their own state, have their time occupied by attending to what they regard as their judicial duties, and permit, if they do not order, applications for naturalization to be made to the clerk, whose knowledge of the laws is derived from the printed blanks which he fills up and

signs, on receiving his fees. By this practice, which, on in-
quiry, I find is general, if not universal, certificates of citizen-
ship are issued indiscriminately and illegally, without a com-
pliance on the part of the alien with any of the requirements
of the statutes, except taking the oath of allegiance.

The first section of the act of 1802, to which I have referred,
contains the following provision :—

" Any alien, being a free white person, may be admitted to
become a citizen of the United States, or any of them, on the
following conditions, and not otherwise :

" 1st. That he shall have declared, on oath or affirmation,
before the supreme, superior, district, or circuit court of some
one of the states, or of the territorial districts of the United
States, or a circuit or district court of the United States, three(a)
years, at least, before his admission, that it was, *bona fide*, his
intention to become a citizen of the United States, and to re-
nounce forever all allegiance and fidelity to any foreign prince,
potentate, state, or sovereignty whatever, and particularly, by
name, the prince, potentate, state, or sovereignty whereof such
alien may, at the time, be a citizen or subject.

" 2dly. That he shall, at the time of his application to be
admitted, declare, on oath or affirmation, before some one of
the courts aforesaid, that he will support the constitution of
the United States, and that he doth absolutely and entirely
renounce and abjure all allegiance and fidelity to every foreign
prince, potentate, state, or sovereignty whatever, and particu-
larly, by name, the prince, potentate, state, or sovereignty
whereof he was before a citizen or subject ; which proceedings
shall be recorded by the clerk of the court.

" 3dly. That the court admitting such alien, shall be satisfied
that he has resided within the United States five years at least,
and within the state or territory where such court is at the time
held, one year at least; and it shall further appear to their
satisfaction, that during that time he has behaved as a man of
a good moral character, attached to the principles of the con-

(a) This, by an amendment, is now "two" years.

stitution of the United States, and well disposed to the good order and happiness of the same : *Provided,* That the oath of the applicant shall, in no case, be allowed to prove his residence."

It will be seen that the court, and not the clerk of the court, is to admit the alien. And that, as the court, before admitting him, is to be satisfied of certain facts, it follows that the powers conferred upon the courts are judicial, and not ministerial or clerical, and consequently, that these powers cannot be delegated to the clerks, but must be exercised by the court, and require an examination into each case sufficient to satisfy the court of the following facts :

" 1. Five years continuous residence of the applicant within the United States, and one year of like residence within the state or territory where the court, to which the application is made, is held.

" 2. That the applicant, during the five years, has conducted himself as a person of good moral character..

" 3. That the applicant is, in principle, attached to and well disposed towards the constitution of the United States."

The " continuous " residence would not, perhaps, be necessary from the language of the section I have quoted, but an amendment, approved March 3, 1813, by president MADISON, provides :

" That no person who shall arrive in the United States from and after the time when this act shall take effect, shall be admitted to become a citizen of the United States who shall not, for the *continued term of five years next preceding his admission, as aforesaid, have resided within the United States,* without being at any time during the said five years out of the territory of the United States."

This amendment is now in force, except the words " without being at any time during the said five years out of the territory of the United States." These words were, in 1848, in " an act for the regulation of seamen on board the public and private vessels of the United States," struck from the section. The object of the amendment of 1848 was to allow seamen who

were actually engaged on any of the public or private vessels of the United States, and thus, in their business, were necessarily beyond the limits of our territory, to avail themselves of the naturalization laws; but the person drawing the repealing clause made it general, instead of an exception in their favor. Whether congress should not restore this provision, making an exception in favor of the seaman and the soldier, it is not for me now to say, as I am inquiring only what the law is, that it may be administered correctly by this court.

From the parts of the laws of congress to which I have referred, I think there can be no doubt of the correctness of the position I have taken on this subject, and that the practice of the clerks in issuing certificates of citizenship without any application to the court, and on proof of residence only, is an abuse which needs to be corrected. It was never intended, by those who enacted the act for the naturalization of aliens, that persons who had been transported for crime—that those who came over here merely because Europe was too full for them—but who retained their loyalty of feeling for the monarchies they had left, should, because they remained here for the period of five years, be entitled to admission to citizenship. The intention was to permit those who came here from abroad, seeking a permanent home—who, by five years of continuous residence, manifested that intention, and by good behavior during all that time, and an attachment to republican principles—a good behavior and an attachment to republican principles, which could be proved to the satisfaction of a court—had shown themselves worthy recipients of the benefits to be derived from citizenship, and safe depositories of the powers it confers, to be admitted to these rights, and the exercise of these powers, by an order entered in open court after an examination into the facts of each case, and a judicial decision upon the application—an examination which should be conducted with the same care, and a decision which should be made with the same deliberation and solemnity as that which should accompany every other judicial act. Those courts which, instead

Matter of application of John Clark.

of administering this law, have by their negligence and inattention practically repealed it, admitting thousands to the rights of citizenship who want all the requisites to entitle them to such admission, have been guilty of a gross violation of duty, and have made the law itself odious in public estimation. Of the wisdom or propriety of our present, or of any naturalization laws, it is not my business at this time to speak; my duty now, is to administer the laws as they are. I am compelled, for the reasons I have stated, to deny the prayer of the applicant, and also to forbid the clerk from, in any manner, exercising the powers conferred by congress upon the courts.

This is all that is necessary for me to say, in deciding the case now before the court; but there are other provisions of the naturalization laws which are loosely interpreted, or wholly misunderstood. By the act of May 26, 1824, the period between the declaration of intention and granting the certificate of citizenship is reduced from three to two years; but this in no manner affects the requirement of five years' previous continuous residence.

The first section of the same act prescribes a different rule for the naturalization of aliens who arrived in this country prior to attaining the age of eighteen; it is:

" Any alien, being a free white person, and a minor, under the age of twenty-one years, who shall have resided in the United States three years next preceding his arriving at the age of twenty-one years, and who shall have continued to reside therein to the time he may make application to be admitted a citizen thereof, may, after he arrives at the age of twenty-one years, and after he shall have resided five years within the United States, including the three years of his minority, be admitted a citizen of the United States, without having made the declaration required in the first condition of the first section of the act to which this is an addition, three years previous to his admission: Provided, Such alien shall make the declaration required therein, at the time of his or her admission; and shall further declare *on oath*, *and prove* to the satisfaction of the

court, that for three years next preceding, it has been the *bona fide* intention of such alien to become a citizen of the United States, and shall in all other respects comply with the laws in regard to naturalization."

The practical construction of this provision, I am informed, is for the clerks to admit aliens who will make oath they arrived during their minority, on proof of three years' residence. The true construction is, that it merely does away with the necessity of a previous .declaration of intention to become a citizen, on the part of those who arrive in the country prior to attaining the age of eighteen years ; but requires, instead of such previous declaration, the oath of the party, and also proof that, for the three years next preceding, it has been the intention of the alien to become a citizen ; but, in all other respects, the act of 1802, and its amendments, are to be complied with by the person who applies under this section.

The act of 1802 provided that no person, arriving after the passage of that act, should become a citizen unless he had his name, birth-place, age, nation, &c., registered in the clerk's office where he arrived; and also the place of his intended settlement : and required that the clerk should record this in his office, and grant certificates. In 1816, an act still more stringent in its requirements as to the evidence in cases of naturalization, was passed, and remained in force until 1828, when these provisions were wholly repealed. There are several other statutes relating to the subject of naturalization, which are not formally repealed, but which have become obsolete, for want of persons to whom they can be applied. The man who would collect and embody in a single act the operative portions of the various statutes on this subject, with such amendments as experience has shown are necessary to their due and faithful execution, would be a public benefactor. While they are, as now, scattered through the laws of congress, from 1802 down to 1848, it cannot be expected that the judges of the various courts will undertake the task of ascertaining exactly which section, and line, or word is in force, and which is repealed ; consequently, the administration of these laws will be loose and

NEW YORK PRACTICE REPORTS. 253

defective, until such an act is passed. And when that is done, and the laws are administered in their purity, it will be apparent that the faults have been far more in the administration than in the laws themselves.