## MATTINGLY *v.* NYE.

1. The statute of 13 Eliz., ch. 5, which is in force in the District of Columbia, does not affect, in favor of subsequent creditors, a voluntary settlement made by a man, not indebted at the time, for his wife and children, unless fraud was intended when the settlement was made. *Sexton* v. *Wheaton* (8 Wheaton, 229; S. C. 1 American Leading Cases, 1), approved and affirmed.
2. A judgment for money due, at a certain time, against the party making the settlement, is conclusive in respect to the parties to it. It cannot be impeached collaterally, and it cannot be questioned upon a creditor's bill.

APPEAL from the District of Columbia; the case being thus:

Nye, a man not very provident, bought a city lot of no great value in Washington, with some money that he had, and on the 25th June, 1857, had it conveyed in trust for his wife and children, to one Harkness as trustee. The purchase and conveyance in trust was made, as it seems by Harkness's own account of it, by Nye at the suggestion of Harkness, "who, living in the neighborhood of Nye, and having frequent opportunities of seeing the destitution and need of the family, and the infirm and broken health of the wife, interested himself in securing a home for herself and children, proposed a conveyance by which the property should be secured against the contingencies of any future recklessness or want of care in the said Nye." On the 21st July, 1860—that is to say *a little more than three years after this transaction*—Nye obtained money of one Mattingly, a person with whom he had had frequent money dealings, and sometimes as it seemed at exorbitant rates (including some dealings before the purchase), making, for the money now got, an assignment of a certain claim, but whether in satis-

faction or as security the assignment did not clearly show. The money not being repaid, Mattingly sued and obtained judgment against him on the 10th June, 1863; and execution having issued without result, he now filed a creditor's bill againt him, his wife and children, making the trustee also a party, to set the trust aside, and have satisfaction from the property conveyed. The bill alleged that *at the date of the purchase and settlement* Nye owed him money; but this was denied by the answer, and, as this court considered on an examination of the evidence, not true!

It was also asserted in Nye's answer that the judgment given was given by default, and that nothing was due by him to Mattingly even then.

The question was, therefore, the validity, as against a party becoming a creditor three years afterwards, of a settlement in favor of his family, made by a man not indebted at the time, and made apparently without fraudulent intent in fact; the case being complicated only by the point set up in the answer of Nye, to wit, that the judgment on which the creditor's bill was filed was for an unfounded claim, and got through his own default.

The court below thought the settlement good; and dismissing the bill, Mattingly appealed.

*Messrs. Cox and Phillips, for the appellant.*

*Mr. Bradley, contra,* relied on *Sexton* v. *Wheaton;* and note thereto in 1 American Leading Cases, 1. He contended also, that there being a proceeding in equity which rested wholly on an assumption of a valid judgment, as a base, it was competent for the defendant to show that in fact the judgment had no validity; even if by so doing he impeached it collaterally.

Mr. Justice SWAYNE delivered the opinion of the court.

This is an appeal in chancery from the decree of the Supreme Court of the District of Columbia. The case as disclosed in the record is as follows: On the 10th of June,

1863, the complainant recovered a judgment at law against the defendant, J. W. Nye, for $2450, with interest from the 21st of July, 1860, until paid, and costs; a *fi. fa.* was issued and returned *nulla bona.* The defendant has no property liable to execution. On the 25th of June, 1857, Nye bought and paid for the property described in the bill. It was conveyed by deed of that date to the defendant, Harkness, in trust for Mary Nye, the wife of J. W. Nye, and her children. The legal title is still in Harkness upon that trust. The bill is a creditor's bill, filed to reach this property. It alleges, in addition to the facts already stated—which are not controverted—that a large part of the indebtedness for which the recovery at law was had, subsisted at the time the property was bought and conveyed, and that hence it is liable in equity to be applied, in satisfaction of the judgment.

Nye and Harkness only answered. Harkness denies that there was any indebtedness by Nye to the complainant at the time of the purchase and conveyance of the trust property. Nye alleges usury in the transactions between him and the complainant to a very large extent; that they had settled everything before the trust property was conveyed to Harkness, and that he then owed the complainant nothing; that the judgment was rendered by default; that he intended to defend, and could have done so successfully, but that he was prevented by extreme illness.

Testimony was taken upon both sides. The court below dismissed the bill.

The case involves several legal propositions which it is proper here to state.

1. The statute of 13 Eliz., ch. 5, is in force in the county of Washington, but it does not affect a conveyance like this as to subsequent creditors, unless fraud was intended when it was made. (*Sexton* v. *Wheaton,* 8 Wheaton, 239; S. C. 1 American Leading Cases, 1.) The whole learning of the law upon this subject is so fully developed in the note to this case in the work last mentioned, that it would be a waste of time to do more than refer to it.

2. Such settlements, though voluntary, are founded upon a meritorious consideration, and will be upheld and enforced in equity against the husband.*

3. The judgment is conclusive in respect to the parties to it. It cannot be impeached collaterally, and it cannot be questioned upon a creditor's bill.

If in this case there is any ground of equitable relief, it should have been presented by a cross-bill, or other proper proceeding had directly, to affect the judgment.†

Here the question is not as to the conclusiveness of the judgment, but as to the indebtedness of Nye to the complainant when the property was conveyed to Harkness. The trust deed bears date on the 23d of June, 1857. The judgment was recovered on the 10th of June, 1863, nearly six years later. The judgment was founded upon an assignment by Nye to the complainant of $2450 of a claim in favor of Bargy and Stewart against the United States. Nye was the assignee of those parties, and his assignment to the complainant is dated July 21st, 1860. This was about three years before the date of the judgment.

But it is alleged by the complainant that the consideration of this assignment included two debts due to him from Nye, evidenced by instruments bearing date on the 2d of November, 1853, and amounting together to $1650. One is an order by Nye on General McCalla to pay the complainant the sum of $1450 out of the claim of Bargy and Stewart before-mentioned. The other is a like order for the payment of $200 out of the same claim, or out of another claim which is mentioned, payment to be made out of the first money which should be received on either, after reserving $500 to meet a previous order which Nye had given. The complainant insists that these two orders represented debts which subsisted more than two years before the execution of the trust deed, and which still subsist. Nye insists that

---

* Ellison v. Ellison, 1 Leading Cases in Equity, 199.

† Bank of Wooster v. Stevens, 1 Ohio State, 233; Marine Insurance Co. v. Hodgson, 7 Cranch, 336; Peck v. Woodbridge, 3 Day, 30; Davol v. Davol, 13 Massachusetts, 265; Story's Equity Pleadings, § 782.

they were given and received in discharge of all his liabilities to the complainant down to their date, and that the complainant took them at his own risk. Here lies the stress of the controversy between the parties.

Nye and the complainant were both examined as witnesses. A considerable mass of other testimony is found in the record. It is to some extent conflicting, but we have had no difficulty in coming to a satisfactory conclusion as to the facts. We think they are as follows:

The complainant made advances of money to Nye from time to time and charged him high rates of usury. Nye evinced a strange fatuity in submitting to whatever terms the complainant thought proper to impose. The order for $1450 was given to the complainant for a much larger sum than he claimed to be due; Nye testifies that it was for double the amount. It was not doubted then that the claim to which the order refers would be speedily sanctioned by Congress, and paid by the government. A committee of the House of Representatives had unanimously reported a bill to pay it. This has occurred more than once since. There has been at no time any adverse action; but the claim has not yet been finally acted upon and is still pending before Congress. According to the testimony of Nye, at the same time that he gave this order to the complainant he gave a like order to William G. White for double the amount of a debt due to him. The condition upon which both orders were given was the same. It was that the creditors should take them in discharge of their debts, and that Nye was to be under no further personal liability touching either the debts or the orders. He avers that they were received by the complainant and White respectively with this agreement.

White was examined as a witness. Speaking of these orders, he says: "That order in my favor was taken by me in full satisfaction of my claim on Mr. Nye; *I understood from Mr. Mattingly that he received the order from Mr. Nye in satisfaction of his claim.*" The complainant in his testimony admits that he advanced but $100 for the order for $200, but

says, the balance was "*in consideration of advantages, benefits, and favors I had done him.*" This order was taken like the other, with the understanding that there was to be no personal liability on the part of the drawer. The creditor was to look alone to the fund upon which it was drawn for payment.

These conclusions receive strong support from the fact that on the 5th of January, 1857, the complainant addressed a letter to S. W. McKnew, in which he stated that he had settled with Nye, and, in effect, that Nye owed him nothing. He complains that this letter was obtained from him by unfair means. The testimony of McKnew shows that in this he is mistaken.

In regard to the assignment of $2450 of the Bargy and Stewart claim, upon which the judgment was recovered, Nye testifies that the only consideration for it, in addition to the pre-existing orders of $1450 and $200, was a further advance by the complainant of $200—$100 in money and the same amount in groceries.

The complainant says: "We had in 1860 such a settlement as we always had. He obtained further advances—one of $400, one of $200, and some smaller amounts at different times which I do not recollect." Even this would leave a large margin of difference between the amount assigned and the amount of the consideration. There are several features in the complainant's testimony which impress us unfavorably, but it is not necessary to dwell upon them. Nor is it material to consider the facts relating to the last assignment. We are entirely satisfied that the orders of November 2d, 1853, were taken by the complainant upon the terms stated by Nye and White. There was, therefore, no indebtedness by Nye to the complainant when the trust deed was executed to Harkness, nor subsequently, until the assignment of July 21st, 1860, was given, if there were before the rendition of the judgment. This is decisive of the case before us. Harkness and Mrs. Nye were neither parties nor privies to the judgment. Their rights, legal and equitable, were vested and fixed by the deed. Neither Nye nor the

complainant could do anything subsequently to impair them. The settlement of 1860 between those parties, and the judgment recovered upon the instrument then given, could have no retroactive effect, so far as the rights of trustee and *cestui que trust* were concerned.

The court below, we think, properly dismissed the bill, and the decree is                                      AFFIRMED.