ARTHUR MITTELBURG, Appellant, *v.* EDWIN HARRISON, Respondent.

## November 15, 1881.

1. The question whether a voluntary conveyance is fraudulent must be determined from all the circumstances.

2. In order to set aside a prior voluntary conveyance at the suit of a subsequent creditor, actual fraud must be proved.

3. A voluntary conveyance of an equity of redemption in premises so covered by prior encumbrances as that no benefit could possibly inure to a subsequent creditor, will not, in the absence of proof of actual fraud, be set aside at the suit of such a creditor.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*

E. P. JOHNSON, with whom are HAYDEN & GLOVER, for the appellant.: A voluntary grantee can take nothing under the conveyance as against creditors of the grantor, in whom there is a resulting trust. — *The State to use* v. *Jacob*, 2 Mo. App. 183; *Curtis* v. *Leavitt*, 15 N. Y. 9. In order to set aside a fraudulent voluntary conveyance actual notice to the donee of the fraudulent intent need not be shown. — *Fisher* v. *Lewis*, 69 Mo. 629; *Lackland* v. *Smith*, 5 Mo. App. 153; *Payne* v. *Stanton*, 59 Mo. 158.

CLINE, JAMISON & DAY, for the respondent: There is nothing in this record showing any equity in plaintiff, or that could entitle him to a decree. — *Payne* v. *Staunton*,

59 Mo. 158; *Read* v. *Livingston*, 3 Johns. Ch. 501; *Sexton* v. *Wheaton*, 8 Wheat. 229.   His remedy is at law by ejectment, and after obtaining possession, his equitable remedy to dispel a cloud, set aside and annul a fraudulent deed and to perfect his title could be maintained. — *Keane* v. *Kyne*, 66 Mo. 216; *Devonsher* v. *Neuenheim*, 2 Sach. & Lef. 208; *Welby* v. *Duke of Rutland*, 2 Bro. P. C. 39; *Shepley* v. *Rangely*, Daveis, 242; *Von Puhl* v. *Penn*, 31 Mo. 334; *Tichnor* v. *Knapp*, 6 Oreg. 205.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding in equity in the nature of a creditor's bill to set aside a conveyance of real estate by one George A. Magwire to defendant Harrison, and to subject the property to sale for the satisfaction of the plaintiff's judgment against Magwire.   The answer is a general denial; it also sets up that defendant is the sole owner, at law and in equity, of the land in question.

The land in question is a parcel fronting two hundred and sixty-one feet on the east line of Second Street, at the corner of Webster Street in St. Louis, and is the western half of city block number 292.   It appears that it lies in the Brazeau tract of four by four arpens.   To this tract John Magwire, the father of George A. Magwire, laid claim, and after litigation he was put in possession.   During the litigation, John Magwire, the father, had obtained advances of large sums upon his claim from defendant's father, from Filley, and from defendant himself, under an agreement that they were to be reimbursed from the land when recovered.   Magwire, during the litigation, had conveyed interests in the tract to sundry persons, retaining, as was supposed, an interest of over fifty per cent.   After recovery by John Magwire in 1873, partition was had; and by agreement defendant Harrison purchased at partition sale under an agreement to sell and divide the proceeds among the owners according to their respective interests as

found by the decree in partition. After this conveyance to Harrison it was first learned by Harrison that John Magwire had already conveyed away his interest in the tract in controversy in this suit. After the legal title had been conveyed to Harrison in the four by four tract, in the partition proceedings, on June 27, 1875, John Magwire made a declaration of use in favor of Harrison to the extent of his indebtedness to him and to his father's estate, which was about $150,000, and on April 4, 1876, Magwire conveyed to Harrison and Filley his entire interest in the land for $235,000, being at the rate of $400,000 for the entire tract. This was in part payment of his indebtedness to Filley, to Harrison, and to the Harrison estate.

The tract in controversy in this suit had been conveyed by John Magwire to Montgomery Blair, in December, 1866; the consideration named in the deed being $1,000. On May 10, 1869, Blair and wife conveyed this piece of land to George A. Magwire, the consideration named in the deed being $6,525. George A. Magwire, on the same day, executed a deed of trust back for part of the purchase-money, the sum of the notes secured being $4,525. On July 23, 1874, George A. Magwire executed a deed of trust on the property in question in this suit to secure to one Beal $5,000. In 1874 and 1875 judgments to the amount of over $1,500 were obtained against George A. Magwire. On July 2, 1875, George A. Magwire, being then insolvent, covered with debts, and having no other property, made the conveyance attacked in this proceeding, by which he transferred this property to defendant Harrison. The consideration named in the deed is $100, but no money passed. Shortly after this, George A. Magwire became indebted to plaintiff in the sum of $1,100. George A. Magwire died in 1878, insolvent, leaving no estate. Plaintiff obtained judgment against Magwire in February, 1878. Execution was returned *nulla bona*. There was evidence that large amounts of taxes,

general and special, had been allowed to accumulate against the Brazeau tract, and that Harrison had been obliged to pay over $22,000 to settle these tax claims in the interest of those for whom he held the Brazeau tract. After the death of Magwire, under foreclosure of the deed of trust of Magwire to Montgomery Blair, which Harrison had acquired, he purchased one hundred and twenty feet of the premises described in the petition, leaving one hundred and forty-one feet unsold.

Defendant Harrison, being examined as a witness for plaintiff, stated that this deed was made to him without any understanding whatever with either George or John Magwire, that he was to hold it in trust for either of them; that nothing was said about it between him and George Magwire ; that the conveyance was made under the general understanding with John Magwire to convey all his fractional interest in the Brazeau tract, and to perfect the title in Harrison for those for whom Harrison held it under the agreement mentioned above ; that the conveyance was to clear up title ; that no consideration was paid, or agreed to be paid, to anyone ; that the consideration for the deed was the indebtedness of Magwire, the father, in part payment of which he was to convey his fractional interest in the Brazeau tract ; that Harrison knew George was insolvent, and knew the land conveyed by him was encumbered ; that the property in question was worth about $5,000, and was encumbered for more than its value ; and that he (Harrison) assumed the deeds of trust upon it, and paid seven or eight thousand dollars for back taxes on the larger tract. As to amounts, the witness said that he could not be exact, his business in regard to the property being managed for him by Mr. Miller, his secretary.

Mr. Miller stated that the transaction with regard to the transfer of this property was with him ; that he believed Harrison never spoke a word to George Magwire or his father about it; that it being known that this equity of

redemption was outstanding, John Magwire, shortly after the partition deed to Harrison, said that George would convey to Harrison, and the deed was accordingly made; and that the deed was taken for the sole purpose of perfecting the title; that it was only discovered after the partition that John Magwire had parted with title to his interest in the western half of block 292. The total back taxes paid by Harrison on the Brazeau tract amounted to $22,000, and the tract in question was about one-twentieth of the tract, and was about of an average value with the rest of the tract. Harrison paid $3,900 on the Beal deed of trust and bought in part of the land, for $3,850, under the Blair deed of trust.

The only witness who testifies as to any actual fraudulent intent, is Beal. He swears that George A. Magwire, at the time he executed the conveyance, told him that the judgments against him would sweep away everything, and that by making this conveyance to Harrison, he would save something to himself. Magwire being dead, this statement cannot be contradicted. It is not corroborated. The trial court, on hearing, dismissed the bill.

The question whether a conveyance made without any valuable consideration moving from the donee to the donor, is fraudulent, must be determined by all the circumstances. And actual fraud must be proved in order to set aside a prior voluntary conveyance at the suit of a subsequent creditor. *Payne* v. *Stanton*, 59 Mo. 159; *Boyle* v. *Boyle*, 6 Mo. App. 594.

In this case we see no satisfactory evidence of actual fraud. The evidence tends to show that George A. Magwire, owning an equity of redemption which could be of no money value to him, or to any outsider, at the request of his father, and to aid his father in carrying out an agreement he had made, conveyed this equity to the person to whom his father had conveyed the tract of which it was a part, to enable his father's grantee to perfect his title, and to make

good to some small extent what appears to have been a breach of good faith on his father's part. The donee had no fraudulent intent, and the donor seems to have acted without any intention of defrauding anyone. It cannot be believed on the evidence that George A. Magwire or any one else could have supposed that anything could ever be realized to him out of an equity of redemption in property encumbered for more than twice its value.

It is contended by counsel for appellant, that the judgment creditor has a right to subject the property of his debtor to sale ; that it lies in no one's mouth to say that that property is worthless ; that the creditor may have some special use for it, and may be willing to bid it in at execution sale, and has a right to his opportunity of doing so. However true this may be, we do not regard the principle as decisive of this case. Plaintiff was not a creditor of Magwire at the time this conveyance was made. If it was not fraudulent in fact, it was not void as to him. The conveyance was, at the most, a constructive fraud ; and, in the absence of proof of actual fraud, ought not to be disturbed at the suit of one to whom the donor was not indebted at the time it was made, and as to whom it is clear that it was made with no idea of defrauding him, and that whether it had been made or not, the property was so covered with prior liens that, under no circumstances, could plaintiff ever have realized anything upon it, even had it remained in the name of Magwire to the date of his death.

"Fraud as to a voluntary conveyance" says Chancellor Kent, in *Reade* v. *Livingston* ( 3 Johns. Ch. 501), "is an inference of law as to existing debts ; but as to subsequent debts there is no such necessary legal presumption, and there must be proof of fraud in fact."

The courts have always construed 13 Elizabeth, from which our statute is taken, so as to make void any conveyance not made for value, as against previous creditors ; but as to subsequent creditors, such conveyances have been con-

stantly held good, where there was no particular badge of fraud to deceive subsequent creditors. *Sexton* v. *Wheaton*, 8 Wheat. 229. In the case at bar, there was no bad faith. The debt to plaintiff could not have been in contemplation of George Magwire when he made the deed attacked. The donor was hopelessly insolvent, and he knew it; but he did not, because he could not, regard this equity of redemption as being of any value, present or prospective, to himself or his creditors. He could have had no view of raising a trust in Harrison, in his own behalf, or of taking from his creditors anything whatever. Nor did he, by this deed, deprive them of anything having a money value; nor did the purchaser consider that he was acquiring by the deed any beneficial interest in the property in dispute.

Courts take a practical view of all matters. We are not to be understood as intimating that, even had plaintiff been a creditor of Magwire at the date of the conveyance, a court of equity, under the evidence in this case, would have been bound to sustain this bill for the purpose of placing in the hands of plaintiff a barren power of bidding in this equity of redemption, to the annoyance of defendant, and without any reasonable probability of pecuniary benefit to plaintiff.

We are clearly of the opinion that the action of the trial court in dismissing the bill was correct.

The judgment is affirmed. All the judges concur.