Driggs & Co.'s Bank v. Norwood.

Affirm.

## DRIGGS & CO.'S BANK v. NORWOOD.

1. HUSBAND AND WIFE: *Use of wife's money.*

Where a husband collected his wife's money and used it as his own, without objection on her part, for a period of more than ten years, and obtained credit on the faith of its being his own, the wife could not afterwards assert her claim to such money or its proceeds against the husband's creditors. Her assent to the husband's use of the money would in such case be presumed, in the absence of proof to the contrary.

2. VOLUNTARY CONVEYANCES: *When fraudulent against subsequent creditors.*

When an embarrassed debtor makes a voluntary conveyance of his property, his indebtedness raises a presumption of fraud against existing creditors, and such presumption becomes conclusive upon insolvency. But a voluntary conveyance by a person in debt is not *per se* fraudulent as to his subsequent creditors, and to impeach it they must prove actual or intentional fraud.

3. SAME: *Post-nuptial settlement upon wife.*

On a bill to subject real estate which a husband purchased and caused to be conveyed to his wife, to the satisfaction of a judgment recovered against him by the plaintiffs as a member of an insolvent firm, the testimony showed that the firm was insolvent or on the verge of insolvency when he entered it; that he was himself largely indebted at that time, and also at the time of the conveyance to his wife; that he had a short time before entering the firm sold the larger part of his real estate and made to a friend a suspicious transfer of the rest of it, and also of his book accounts; that the purchase of the land conveyed to his wife was made soon after he entered the firm, and that a few days after the conveyance the firm was closed out by creditors; that the amount thus settled upon his wife exceeded in value the rest of his property; that shortly after such conveyance his firm contracted a large debt with the plaintiffs which they had no reasonable grounds to believe they would be able to pay; and that the deed to the wife was not acknowledged or recorded until about two years after its execution and until after the commencement of the plaintiffs' suit. The exact time when the plaintiffs' debt accrued does not appear from the record. *Held:* That although the

plaintiffs must be treated as subsequent creditors in the absence of proof of the date at which their debt accrued, the conveyance to the wife was fraudulent as to them, and they were entitled to the relief sought by their bill.

APPEAL from *Nevada* Circuit Court in Chancery.
S. A. BYRNE, Judge.

*Atkinson & Tompkins*, for appellants.

1.   The money of the wife not having been scheduled, or entrusted to the husband as agent, or kept separate, became the husband's.   *Const.* 1868, *art.* 12, *sec.* 6; 30 *Ark.*, 79; *Ib.*, 124.   By permitting the husband to use and control her property, as his own, and obtain credit on the faith of it, the wife lost her right as against her husband's creditors.   2 *Perry Trusts, sec.* 678; *Schouler on Dom. Rel., sec.* 119 (*3d Ed*).

2.   The husband being involved at the time the lot was deeded to the wife, the conveyance was fraudulent as to his creditors both prior and subsequent.   38 *Ark.*, 419.   The fact that the deed was conveyed to the wife directly does not aid him; it is the same as if made to him and by him conveyed to her.   33 *Ark.*, 762.

*Montgomery & Hamby*, for appellees.

1.   To entitle appellants to relief they must show an unsatisfied judgment upon a debt created *prior to the conveyance*, the issuance of execution and inability to find property out of which to make the debt.   31 *Ark.*, 546.

2.   The case in 30 *Ark.*, 79, was decided before the passage of the Act Dec. 15, 1875, which provides that a married woman shall not be prejudiced by her failure to schedule, and the fact that she permits her husband to control and manage her property, is not of itself sufficient evidence of relinquishment of her title, but he is presumed to be acting as her agent. *Mansf. Dig., secs.* 4634–6.

See also *Rudd v. Peters*, 41 *Ark.* 177 ; 42 *Ark.*, 62 ; 22 *Id.* 429 ; *Stewart Husb. and Wife*, sec. 88 ; 33 *Mo.*, 156.

SMITH, J. The bill alleged that the plaintiffs, Driggs & Co., had recovered judgment against Norwood, as a member of the firm of Nelson & Co., for more than $1,200 and had taken out execution thereon, which was returned unsatisfied ; that Norwood had bought a lot in the town of Prescott, and for the purpose of cheating and hindering his creditors, had caused the deed to be made to his wife. The prayer was for the subjection of the property to the satisfaction of the plaintiffs' debt.

The defendants filed a joint answer, in which they denied any fraud in the transaction, and averred that the lot was purchased and paid for with the wife's own money. The bill was dismissed at the hearing.

The testimony developed these facts : Norwood was a country physician with a limited practice and utterly without means, until, in the year 1869, he married a widow, who had an interest in her deceased husband's estate. From this source he received fifteen hundred dollars. He invested eight hundred dollars in a farm, taking the title in his own name, and lent such part of the remainder, as was not consumed in the support of the family, upon interest. He seems to have enjoyed a reasonable share of prosperity, cultivating his farm and practising his profession, until the year 1882, when he removed to Prescott, the county seat of his county. He was then the owner of another small farm, in addition to the one previously mentioned, was free from debt, and had one thousand dollars or more due to him in notes and accounts. He was regarded by his neighbors as a man in easy circumstances. About this time he was induced to sign a bond of $5,000 ; and the condition of the bond not having been performed, he and two others

of the sureties made their joint note for $1,600 in adjustment of their liability. This note had not been paid down to the taking of the proofs in this cause and an action was pending in the courts upon it. In the course of the complications growing out of this bond, and as soon as it was ascertained that the sureties were in for a loss, Norwood made a suspicious transfer of the smaller of his two farms and of his book accounts to a friend in Prescott. In the fall of 1882 he also sold the other farm, and about the first of October in that year was admitted as a partner in the mercantile firm of Nelson & Co.

On November 18th, 1882, he became surety on the bond of the postmaster at Prescott, and made oath that he was worth one thousand dollars over and above all debts, liabilities and exemptions. On November 21, 1882, occurred the transaction, which is the subject of this controversy, viz: the purchase of the town lot for three hundred and sixty dollars and the conveyance of it to his wife. A few days afterwards—not later than the first of December following—Norwood's firm failed in business, or was closed out by creditors. The plaintiffs recovered their judgment on September 4, 1884. It does not appear from the record when their debt was created. It is probable that it was before the date of the conveyance, which is attacked herein as fraudulent; since, as we have seen, the firm of Nelson & Co. failed very shortly afterwards. The plaintiffs were bankers at Prescott, and it would be strange if the firm of Nelson & Co. could have obtained so large a credit on the verge of insolvency or after insolvency. Still on this point of the exact date of the accrual of the debt, there is neither allegation, nor proof, and the plaintiffs must accordingly be treated as subsequent creditors.

Driggs & Co.'s Bank v. Norwood.

**1. HUSBAND AND WIFE.** Use of wife's money.   The money which Norwood collected for his wife was rightfully hers and could have been secured to her use by an investment in real estate in her own name, or by an investment in personal property, a schedule of which was recorded in the county of her residence; or, possibly, if it was desirable to keep it in money or choses in action, by holding it separately from that of her husband. It was her separate property so long as she chose to preserve its distinctive character, and did not entrust its management or control to him otherwise than as an agent. *Beeman v. Couser*, 22 *Ark.*, 429; *Constitution of* 1868, *art.* XII, *sec.* 6; *Humphries v. Harrison*, 30 *Ark.*, 79; *Hydrick v. Burke, Ib.*, 124.

There is nothing to show that Norwood, in the investments he made, acted as his wife's agent. On the contrary he purchased lands for his own benefit and dealt with her money as his own for a period of more than ten years, and obtained credit on the faith of its being his own. Mrs. Norwood is not shown to have objected to such use and her assent must be presumed. It is now too late to assert her claim to the money or its proceeds against her husband's creditors. 2 *Perry on Trusts, sec.* 678; *Schouler Domestic Relations, 3d Ed., sec.* 119; *Humes v. Scruggs*, 94 *U. S.*, 22.

**2. VOLUNTARY CONVEYANCES:** When fraudulent against subsequent creditors.   If the plaintiffs' debt was in existence, when the transfer was made, there could not be any doubt of their right to impeach it. For every voluntary alienation of his property by an embarrassed debtor is presumptively fraudulent against existing creditors. Indebtedness raises a presumption of fraud, which becomes conclusive upon insolvency. But as to subsequent creditors, a voluntary conveyance by a person in debt is not *per se* fraudulent. To make it so, proof of actual or intentional fraud is required. *Sexton v. Wheaton*, 8 *Wheat.*, 229; *S. C.* 1 *Am. Lead.*

*Cas.* 17 *and notes; Hinde's Lessee v. Longworth,* 11 *Wheat.*, 199; *Mattingley v. Nye,* 8 *Wall.,* 370; *Wallace v. Penfield,* 106 *U. S.,* 260; *Payne v. Stanton,* 59 *Mo.,* 159; *Beade v. Livingston,* 3 *John. Chy.,* 501; *Mittelbury v. Harrison,* 11 *Mo. App.,* 136, affirmed on error, 3 *S. W. Rep.,* 203.

The cases have always made this distinction between the two classes of creditors, as to the burden and quantum of proof. But in the text books and in the decided cases, there is some obscurity and perhaps conflict as to what are the frauds of which subsequent creditors may take advantage. Where the fraud is directed specifically against them, as where a voluntary settlement is made with a view to becoming subsequently indebted, there can be no difficulty. Such a case was *Savage v. Murphy,* 34 *N. Y.,* 508, where the judgment debtor, being engaged in an extensive business and already considerably indebted, stripped himself of the title to all his property by transfer to his wife and children, with the intent to contract a future indebtedness on the credit of his apparent ownership of the property transferred, of which he still remained in possession.

But is it necessary in every such attack to show a specific intent to defraud future creditors? Or may the transfer be avoided at the suit of a subsequent creditor, on proof that it was a fraud upon the rights of previous creditors?

In *Tony v. McGeehee,* 38 *Ark.,* 427, it was said : " A voluntary conveyance may be impeached by a subsequent creditor, on the ground that it was made in fraud of existing creditors ; but to do so, he must show either that actual fraud was intended, or that there were debts still outstanding, which the grantor owed at the time he made it."

As we have stated above, a creditor who assails a conveyance of his debtor's property made before the creation of his debt, must show fraud in fact. Existing indebtedness is not

conclusive, but only a circumstance from which the fraudulent intent may be inferred. *Pepper v. Carter*, 11 *Mo.*, 543 *Rose v. Brown*, 11 *W. Va.*, 134.

In *Cunningham v. Williams*, 42 *Ark.*, 170, it was said that the intention must have been to put the property beyond the reach of debts which the settlor intended thereafter to contract, and which he did not intend to pay, or had not reasonable expectation of being able to pay. Compare 1 *Amer. Lead. Cases*, 5th Ed., *40 et seq.; *Wait on Fraudulent Conveyances, Ch. VI; Bump on Fraudulent Conveyances, Ch. XIII; Graham v. Railroad Co.*, 102 *U. S.*, 148; *Horback v. Hill*, 112 *U. S.*, 144; *Read v. Livingstone*, 3 *John. Chy.*, 497; *Shand v. Hanley*, 71 *N. Y.*, 319; *Parkman v. Welch*, 19 *Pick.*, 237; *Day v. Cooley*, 118 *Mass.*, 527; *Claflin v. Miss.*, 30 *N. J. Eq.*, 211; *Johnson v Skaggs*, Court of App. *Ky., Jan.*, 1887, 2 *S. W. Rep.*, 493.

3. SAME. Post-nuptial settlement upon wife.

But whether it be sufficient for the subsequent creditor to prove that the conveyance was intended to defraud existing creditors, or whether he must prove that it was executed as a cover for future schemes of fraud, the deed under consideration must be condemned. It was a voluntary post-nuptial settlement by Norwood upon his wife. He was at that time, according to his own account, largely insolvent as an individual, and the firm, of which he was a member, was on the brink of ruin. The amount he settled upon his wife exceeded in value the rest of his property. The deed to the wife was never acknowledged before an officer by the grantor until about two years after its execution and since the commencement of this suit. Without acknowledgement it could not be recorded. The possession of the property and the concealment of the transfer may have enabled Norwood to obtain a false credit. And shortly after the transfer, his firm contracted a debt of considerable magnitude to the plaintiffs, which they had no reasonable grounds to believe they would

be able to pay. The transaction wears the badge of fraud.

The decree is reversed and the cause remanded with directions to grant to the plaintiffs the relief they pray for.