BISHOP et al. v. LEONARD et al.

(Circuit Court, D. Indiana. May 15, 1902.)

No. 10,054.

1. GIFTS—SUIT TO RECOVER PROPERTY—WHO MAY MAINTAIN.
    An executed gift, even though procured through undue influence, or made by one mentally incompetent, is voidable only, and passes title

¶ 1. Revocation of gifts causa mortis, see note to Castle v. Persons, 54 C. C. A. 143.

to the property to the donee, where it remains until a disaffirmance by the donor, or possibly by his executor after his death; and, where there has been no disaffirmance either by the donor during his lifetime or by his executor, his heirs at law have no standing to maintain a suit in equity to recover the property or its proceeds, nor can they be vested by any action of the executor with the right of disaffirmance.

°2. SAME.

A compromise agreement entered into between the executor and beneficiaries under the will of a testatrix on one side and her heirs at law on the other, by which one-half of the "property belonging to the estate" of the decedent, in kind or otherwise, was to be turned over and conveyed to the heirs, vests them with no right to sue for the recovery of property which was delivered by the decedent in her lifetime to another as a gift.

In Equity. On demurrers to bill.

C. W. Baker, O'Hara & Jordan, and John D. Thomson, for complainant.

Smith, Duncan, Hornbrook & Smith, A. C. Harris, Wm. C. Daily, Edward B. Raub, Frank C. Cutler, J. W. Newman, and J. J. M. La Follette, for defendants.

PER CURIAM. This is a suit by the complainants to reach and reclaim the proceeds of certain government bonds alleged to have belonged to one Elizabeth P. Patterson in her lifetime, and which were procured from her by the defendant Mary E. Leonard as a gift four days before the death of the donor. Mrs. Patterson lived in Cincinnati, Ohio, and Mrs. Leonard, who was her first cousin, came to visit her about a week before her death. Mrs. Leonard then and for a long time before her visit was intimately acquainted with, and had great influence over Mrs. Patterson. Mrs. Patterson was at the time of the visit, and for a long time before had been, in failing health, and her mental faculties had become impaired, and she was of unsound mind, and incapable of transacting business and easily influenced. As soon as Mrs. Leonard became an inmate of the house of Mrs. Patterson, she began by undue influence, art, and artifice to exert a control over her, and while she was in the aforesaid mental condition, sick in bed, and unable to transact business or to enter into agreements or contracts of any kind, Mrs. Leonard, by such influence, importunity, argument, and entreaty, solicited and procured Mrs. Patterson to give to her certain government bonds of the face value of $4,000, although Mrs. Patterson was in no mental condition to legally make a valid gift, and was sick, ill, and infirm in mind and body, and unable to resist the importunities, entreaties, and arguments of Mrs. Leonard: Four days after the gift had been made Mrs. Patterson died testate, leaving a will naming the Union Savings Bank & Trust Company as executor and trustee, and in said will giving all her property to others, to the exclusion of the complainants. The complainants, as heirs at law, brought suit in an Ohio court to contest the validity of the will. The suit was compromised by the defendant the Union Savings Bank & Trust Company, individually and as executor and trustee, and by the other beneficiaries under the will agreeing to turn over and convey and deliver to com-

plainants, in kind or otherwise, one-half of the said property belonging to the estate of the said decedent, Elizabeth P. Patterson, which said agreement was in writing, and was and is in full force and effect and binding upon all the parties; that said agreement of settlement was approved and ordered by the court; and thereupon a decree was entered after the verdict of a jury affirming and establishing the said will and the codicils thereto. Said agreement has been partially executed and carried out."

The defendants have demurred to the bill for various reasons. The foregoing is a sufficient statement of the facts contained in the bill to disclose the grounds upon which the court rests its decision. The bill discloses an executed gift made by the testatrix to Mrs. Leonard. . It is not quite clear whether the complainants rest their right to have the gift declared invalid on the ground that at the time it was made the donor was so far deprived of understanding as to be unconscious of what she did, or on the ground that her mental weakness was taken advantage of and her powers of resistance were overcome by undue influences. But it does not seem to me that it makes any difference whether the donor was insane, or whether her weakened faculties were overcome by false and fraudulent artifices. In either case the gift was an executed one, and the right, title, and possession of the bonds passed to and became vested in the donee, subject to the right of disaffirmance by the donor, or perhaps by her legal representatives. The law seems to be thoroughly settled that the executed gift of an insane person who is not under guardianship at the time is voidable, and not void. Ætna Life Ins. Co. v. Sellers, 154 Ind. 371, 56 N. E. 97, 77 Am. St. Rep. 481, and cases there cited. Until disaffirmance the right and title to such a voidable gift passes as fully as though the right and title to the gift were unimpeachable. The sole right remaining to the donor in such a case is the right of disaffirmance, and no action can be maintained to recover the gift until after disaffirmance. Ætna Life Ins. Co. v. Sellers, supra. If the gift was procured by false and fraudulent artifices operating on a weakened and diseased mind, the title to the gift would nevertheless pass to the donee, leaving in the donor simply the right to disaffirm, and then sue for the recovery. It follows that the testatrix at the time of her death had no right or title to the bonds nor to their possession. She had simply the right to disaffirm the gift, and then reclaim the bonds or their proceeds.

Conceding, without deciding, that the right of disaffirmance passed to the executor, and that after disaffirmance it might maintain a suit to reclaim the bonds or their proceeds, it is not alleged that it has exercised its right of disaffirmance. It is alleged that when written request to sue was made by the complainants the executor declined to do so. But it was not asked to disaffirm and then sue. But if the refusal to sue is to be regarded as a refusal to disaffirm and then sue, how does such refusal confer the right of disaffirmance on the complainants? It seems quite clear that the only rights of the complainants grow out of the compromise agreement, and it is equally clear that the agreement as pleaded does not confer or attempt to confer any rights on the complainants except "to one-half of the

property belonging to the estate" of the testatrix. The right of disaffirmance was not property belonging to her estate at the time of her death, and so if it were assignable it did not pass to the complainant for want of apt words of conveyance. But, in my opinion, a mere naked right of disaffirmance of an executed gift is not assignable so as to give the assignee a standing in a court of equity. It is, at most, the assignment of a mere litigious right—the right to file a bill in equity—and not an assignment of property or of any right in or to property. It is the assignment of a mere right to bring a suit when the assignor has no right in or title to the property about which the suit is to be brought. The doctrine announced in the case of Graham v. Railroad Co., 102 U. S. 148, 26 L. Ed. 106, and cases there cited, seems to me to settle this question adversely to the rights of the complainants to maintain the present bill.

The demurrers to the bill are sustained, and the bill, unless amended in 15 days, will be dismissed for want of equity, at complainants' costs.