COLLATT *v.* BOWEN.

Opinion delivered March 10, 1930.

*N. A. McDaniel,* for appellant.

*Arthur C. Thomas,* for appellee.

SMITH, J. This suit was brought to cancel a deed executed by J. A. Bowen to his sons, Clyde and Luther, and his daughter, Mrs. Lera Opitz, as having been executed in fraud of the grantor's creditors. It was alleged in the complaint that plaintiffs and J. A. Bowen were formerly partners in the mercantile business, and that plaintiffs sold their interest in the partnership to Bowen on February 1, 1926, for a cash payment and a deferred payment of $1,401.29, which was to be paid in the fall of that year. The time of payment was not more definitely fixed. That default was made in the deferred payment, and suit was filed on August 26, 1927, in the chancery court, in which a judgment was prayed for the balance due, and that this balance be decreed to be a lien on the partnership property, and that it be ordered sold in satisfaction thereof. There was a controversy as to whether Bowen had bought certain real estate held as

partnership assets, and this issue was decided in Bowen's favor. But the court found that Bowen was indebted to plaintiffs in the sum of $928.81, and decreed that a lien be declared upon the one-half interest of Bowen in certain real estate, and upon the three-fourths interest in the furniture and fixtures, and a commissioner was appointed to make a sale if the judgment was not paid, and, as it was not paid, a sale was made and duly reported by the commissioner. The proceeds of the sale amounted to $250. Thereafter an execution issued for the balance then due, and on the ........day of May, 1928, a return *nulla bona* was made.

The complaint further alleged that at the time of the sale of the partnership business Bowen owned certain lots in the town of Haskell and a seventy-four-acre farm, which he undertook to convey to his sons, Clyde and Luther, and his daughter, Mrs. Lera Opitz, by a deed dated November 6, 1926. It was alleged that there was no consideration for this deed, and that it was executed in fraud of the grantor's creditors. An error was made in the description of the land conveyed, to correct which a second deed was executed February 19, 1927. It was prayed that both these deeds be canceled.

The answer admitted the execution of the deeds, but denied that they were fraudulent. It was alleged in the answer that Bowen was solvent when the first deed was made, and that it was executed upon a valuable and sufficient consideration.

Depositions were taken, and, upon the final submission of the cause, it was dismissed as being without equity, and this appeal has been prosecuted to reverse that decree.

The testimony establishes the fact that before the purchase of the plaintiff's interest in the partnership business Bowen agreed with his children to divide his real estate among them, and, pursuant to this understanding, he conveyed twenty acres of the land to his son, Clyde. This deed is not questioned, but the agreement

to convey appears to have been voluntary and was never further consummated for the reason that Bowen was unable to agree with his wife, who was the stepmother of the children, as to the apportionment of her homestead and dower rights. She was later placated by the payment of a sum of money and joined in the execution of the deeds here sought to be canceled. These deeds conveyed all the real estate owned by Bowen except his homestead, and it is admitted that Bowen is now insolvent. If the lands conveyed by Bowen to his children cannot be subjected to the payment of plaintiff's judgment, it cannot otherwise be collected.

The deed to Clyde Bowen for the twenty-acre tract of land was not offered in evidence, but we do not understand that plaintiffs question its execution or validity. This tract of land was excluded from the conveyances sought to be canceled, and it appears that it was an error in its description which made the deed dated February 19, 1927, necessary to correct the description employed in the deed of November 6, 1926. The suit therefore involves only the lands conveyed by these deeds.

After a careful consideration of the testimony, we have concluded that the conveyances were voluntary, and that the relief prayed should be granted. The present insolvency of the grantor is unquestioned, and we are convinced that he was insolvent when these deeds were made, and, if not, their effect was to make him so.

It is true the foreclosure suit was not filed until August 26, 1927, and that the first deed was made November 6, 1926, but this was in the fall, and the payment of the balance on the purchase price of plaintiffs' interest in the partnership business was then due, and plaintiffs were insisting on payment. Bowen had taken his son, Luther, into the partnership business, which had not prospered, and an offer was made to return this property in satisfaction of the debt, and the offer had been refused. An offer had also been made to pay the debt by the assignment of certain accounts, and this offer had

likewise been refused. The value of the accounts was not shown. If they were collectible, no reason is given why Bowen did not collect them and pay the debt which the court found was due the plaintiffs.

The deeds were to the children as tenants in common, and there was no conveyance to any one of the children of any particular portion of the land. They recited a consideration of one dollar and love and affection. The grantees testified that they paid the dollar, which was, of course, a mere nominal consideration, and the testimony is not at all satisfying that they paid anything more. The value of the land was variously estimated at from one thousand to three thousand dollars. Clyde Bowen testified that his father owed him $500, but he gave no detailed account as to how or when this indebtedness was incurred. He was asked if he would accept the $500 due him and surrender his interest in the land, and he stated that he would not. Luther Bowen testified that his father was indebted to him in the sum of $1,000, but his explanation of this indebtedness was more vague and less satisfying than was the testimony in regard to the indebtedness due Clyde. Luther testified that he had done some work for his father, but he did not explain when it was done, or the amount thereof, or the price therefor. He did admit, however, that he had made no charge for this work when it was performed. Bowen, the grantor, testified that he was also indebted to his daughter, Mrs. Opitz, but she did not testify in the case, and there was no testimony as to the amount of this indebtedness or as to how or when it was incurred.

It also appears that there was no change in the possession of the land, and the tenants continued to attorn to the grantor. His sons, the grantees, testified that it was understood between them and their father that he might collect and appropriate the rents as long as he wished after paying the taxes and repairs.

The law of this subject has been so often stated and restated that it would be a work of supererogation to re-

view the cases on the subject. A single quotation from the opinion in the case of *Norton* v. *McNutt,* 55 Ark. 59, 17 S. W. 362, will suffice. In that case Mr. Justice HEMINGWAY, speaking for the court, said: "Every gift of property by one indebted is presumptively fraudulent as to existing creditors; and upon proof of the gift, the burden is cast upon those asserting it to show that the donor's intentions were innocent, and that he had abundant means left to pay all his debts. Wait, Fraudulent Conv., §§ 93-5; Bump, Fraudulent Conv., 276; *Pratt* v. *Curtis,* 2 Lowell 90. The plaintiff was a creditor prior to the asserted transfer of the mule, and the jury was warranted in finding that it was made without any valuable consideration. In that case it was presumptively fraudulent; and, as there is no evidence that the donor retained sufficient property to satisfy his creditors, the presumption becomes conclusive. *Driggs* v. *Norwood,* 50 Ark. 42, 6 S. W. 323."

Under the facts as we find them to be, and under the law as thus declared, the deeds were fraudulent, and the decree of the court below will therefore be reversed, and the cause remanded with directions to cancel them as having been executed in fraud of the grantor's creditors.